**E-FILED**
Wednesday, 26 October, 2005  04:53:15 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

DAVID E. SLOAN,                )
                              )
       Petitioner,        )
                              )
    v.                     )     No. 05-1036
                              )
UNITED STATES OF AMERICA,      )
                              )
       Respondent.        )

## O R D E R

Before the Court is Petitioner David E. Sloan's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, and Supporting Memorandum [Doc. # 1]; the Government's Response [Doc. # 5-1] and attached Affidavit [Doc. # 5-2]; and Petitioner's Traverse [Doc. # 6].[1]  For the reasons that follow, Petitioner's Motion is denied.

## I.
### BACKGROUND

On July 24, 2002, a federal grand jury returned a single-count indictment charging Petitioner with conspiracy to

---

[1] References to the Government's Response are to "Gov't Resp. ___"; references to Petitioner's Traverse are to "Pet'r Trav. ___"; references to the Affidavit attached to the Government's Response are to "Aff. ___"; references to the Plea Agreement [Doc. # 53] are to "Plea Agr. ___"; references to the Transcript for the Change of Plea Hearing [Doc. # 77] are to "Plea Tr. ___"; and references to the Transcript for the Sentencing Hearing [Doc. # 76] are to "Sent. Tr. ___".

manufacture more than five hundred (500) grams of a mixture and substance containing methamphetamine in violation of Title 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(A)(viii). Petitioner faced a minimum of ten years and a maximum of life imprisonment if convicted; however, given that he had a prior felony drug conviction, he thereby exposed himself to an enhanced mandatory minimum sentence of twenty years imprisonment. See 21 U.S.C. § 841(b)(1)(A)(viii).

It was against this backdrop that Petitioner decided to enter a written plea agreement with the Government waiving both his right to appeal and/or collaterally attack his conviction and/or sentence. In return for Petitioner's full cooperation, complete truthfulness and substantial assistance, the Government agreed not to bring additional charges against Petitioner relating to or arising from the offense charged in the indictment; to recommend a sentence at the low end of the guideline range; and at the Government's sole discretion, to move for a downward departure from the guideline range, as well as any mandatory minimum sentence imposed by statute.

On July 14, 2003, the Court conducted a change of plea hearing and accepted Petitioner's guilty plea. The court then ordered a pre-sentence investigation report ("PSR") which was made available to Petitioner for review prior to his sentencing.

The PSR recommended a base offense level of 36 as a result of Petitioner's involvement with more than 5 kilograms but less than 15 kilograms of a mixture and substance containing methamphetamine.[2]  See U.S.S.G. § 2D1.1(a)(3) and (c)(2).  The PSR also recommended a six-level increase in Petitioner's offense level for "cooking" methamphetamine in the presence of a minor, exposing the minor to a substantial risk of harm.  See U.S.S.G. § 2D1.1(b)(5)(C).  Because Petitioner plead guilty in open court and admitted to his involvement in the instant offense, the PSR recommended a three-level decrease in his offense level for acceptance of responsibility.  See U.S.S.G. § 3E1.1(a) and (b).  This resulted in a three-level net increase in Petitioner's adjusted offense level to 39.  Finally, the PSR recommended a criminal history category of III based on a total calculation of five criminal history points.  See U.S.S.G. § 5A. Thus, under the PSR recommendations, Petitioner was facing a guideline range of 324 to 405 months of imprisonment.

At the sentencing hearing conducted on February 6, 2004, Petitioner's counsel and the Government brought to the Court's

---

[2]  The indictment charged Petitioner with conspiracy to manufacture more than 500 grams of a methamphetamine mixture; the PSR recommended holding Petitioner accountable for 1,215 grams (12.15 kilograms) of a methamphetamine mixture based on substantial evidence obtained by the Drug Enforcement Agency ("DEA") and the Illinois State Police West Central Illinois Task Force ("Illinois Task Force").

attention that paragraph 117 of the PSR was incorrect for recommending a six-level increase in Petitioner's offense level for "cooking" methamphetamine in the presence of a minor.  The Government explained that after further investigation, the so-called "minor" was in fact an adult at the time of the incident and, therefore, Petitioner should have only received a three level increase in his offense level rather than a six level increase.[3]

The Court then made the appropriate corrections to the PSR. This resulted in a change in Petitioner's adjusted offense level from 39 to 36, as well as a reduction to the previous guideline range of 324 to 405 months, to a new guideline range of 235 to 293 months of imprisonment.  However, because Petitioner had a prior felony drug conviction, he faced a mandatory minimum sentence of 240 months of imprisonment.  See 21 U.S.C. § 841(b)(1)(A)(viii).  This in turn resulted in an actual range of imprisonment of 240 to 293 months.

Upon the Court's inquiry, Petitioner's counsel stated he had a reasonable opportunity to review and discuss the PSR with

---

[3] U.S.S.G. § 2D1.1(b)(5)(B) recommends a three-level increase for creating a substantial risk of harm to **human life** while manufacturing methamphetamine; while on the other hand, § 2D1.1(b)(5)(C) recommends a six-level increase for creating a substantial risk of harm to the **life of a minor** while manufacturing methamphetamine.

4

Petitioner.  Both Petitioner and his counsel further stated that
neither had any objections to the PSR as modified and corrected
by the Court.  The Court therefore adopted the factual findings
and guideline reccomendations reflected in the PSR as modified.
The Government, upon its sole discretion, recommended a forty
percent downward departure from the mandatory minimum (240
months) to a sentence of 144 months.  The Government also
recommended fifteen months credit for time served in state
prison on related charges, resulting in a final recommendation
of 129 months (almost half the time Petitioner faced under the
statutory mandatory minimum).  Petitioner's counsel agreed with
the Government's final recommendation and, the Court, therefore,
sentenced Petitioner to 129 months of imprisonment.

Petitioner did not file a direct appeal and, despite having
waived his right to collaterally attack his sentence, Petitioner
filed the instant § 2255 motion on February 7, 2005.  In his
motion, Petitioner raises the following grounds for relief: (1)
the Court erred by using his prior state felony drug convictions
in the calculation of his criminal history points under the
sentencing guidelines; (2) the Court erred by using his prior
state felony drug convictions to enhance his mandatory minimum
sentence; (3) trial counsel was ineffective for failing to
challenge the Court's use of Petitioner's prior state felony

5

drug convictions to enhance his mandatory minimum sentence; (4) trial counsel was ineffective for failing to file a notice of appeal; and (5) trial counsel was ineffective for failing to investigate the specific type of methamphetamine involved in the conspiracy and to challenge the amount of drugs attributed to him in the PSR.[4]

## II.
## LEGAL STANDARD

The law in this circuit is clear: A plea agreement waiving the right to bring a collateral attack pursuant to § 2255 is enforceable as long as it made voluntarily, knowingly, and is not the product of ineffective assistance of counsel. Jones v. United States, 167 F.3d 1142, 1144-46 (7th Cir. 1997). A plea agreement is made voluntarily "when it is not induced by threats or misrepresentations, and the defendant is made aware of the direct consequences of the plea." Galbraith v. United States, 313 F.3d 1001, 1006 (7th Cir. 2002) (citations omitted). A plea agreement is made knowingly "when the defendant is competent, aware of the charges and advised by competent counsel." Id.

---

[4] While Petitioner alleges that counsel was ineffective for failing to investigate the type of methamphetamine involved in the conspiracy, it does not appear from his round-about allegations that this is actually what he is attempting to argue. Rather, it seems more plausible that he is attempting to argue that counsel was ineffective for failing to challenge the amount of drugs attributed to him in the PSR, resulting in the imposition of a higher base offense level.

Finally, as the Seventh Circuit has reiterated, "waivers are enforceable as a general rule[, and] the right to mount a collateral attack pursuant to § 2255 survives **only with respect to those discrete claims which relate directly to the negotiation of the waiver**." Id. at 1145 (emphasis added). This means that a plea agreement may not be rendered nugatory by all allegations of ineffective assistance. See Mason v. United States, 211 F.3d 1065, 1068-69 (7th Cir. 2000). Only those claims of ineffective assistance that directly attack the waiver itself may prevail over an otherwise valid plea agreement. Jones, 167 F.3d at 1145.

As a result, this Court must first determine whether Petitioner's allegations of ineffective assistance of counsel relate directly to the negotiation of the waiver provisions contained in the plea agreement. If so, the Court must then turn to the seminal case on ineffective assistance of counsel, Strickland v. Washington, 466 U.S. 668 (1984), to determine whether counsel's performance was constitutionally deficient.

In Strickland, the Supreme Court stated that in order to demonstrate that counsel's performance did not meet the constitutional standard, a petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. The courts,

7

however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 690. Furthermore, it is insufficient to simply prove that counsel's representation was "objectively unreasonable," a petitioner must also prove that he suffered prejudice as a result. Id. at 694.

In the context of a plea agreement, a petitioner "can prove that [counsel's] performance was deficient if he shows that [counsel] did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him." United States v. Cieslowski, 410 F.3d 353, 359 (7th Cir. 2005) (citations omitted). A petitioner can also prove the "prejudice prong" of the Strickland test by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded and would have insisted upon going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Galbraith, 313 F.3d at 1008 (citations omitted).

## III.
## ANALYSIS

It is important at the onset to point out that Petitioner does not argue that he failed to understand the plea agreement or was coerced into accepting it, nor does he allege that counsel was ineffective in negotiating the plea agreement. Even

8

if such an argument could be construed from Petitioner's § 2255
motion, although this Court does not, the record in this case
would belie such a claim.

To be sure, the language of the plea agreement itself
indicates that Petitioner fully understood his appeal and
collateral review rights and voluntarily agreed to waive those
rights on his own.  Paragraph 10 of the plea agreement reads in
relevant part:

> The defendant is aware that federal law . . . affords
> a defendant a right to appeal a final decision of the
> district court and . . . a right to appeal the
> conviction and/or sentence imposed.  **Understanding
> those rights, and having thoroughly discussed those
> rights with the defendant's attorney, the
> defendant knowingly and voluntarily waives the right to appeal
> any and all issues relating to this plea agreement and
> conviction and to the sentence, including . . . the
> manner in which the sentence . . . was determined, on
> any ground whatever**, in exchange for the concessions
> made by the United States in this plea agreement . . .

[Plea Agr. at 4-5] (emphasis added).  Likewise, paragraph 11 of
the plea agreement contains the following pertinent language:

> The defendant also understands that he has a right to
> attack the conviction and/or sentence imposed
> collaterally . . . .  The defendant understands such
> an attack is usually brought through a motion pursuant
> to Title 28, United States Code, Section 2255.  The
> defendant and the defendant's attorney have reviewed
> Section 2255, and the defendant understands his rights
> under the statute.  **Understanding those rights, and
> having thoroughly discussed those rights with the
> defendant's attorney, the defendant knowingly and
> voluntarily waives his right to collaterally attack
> his conviction and/or sentence. . . . The defendant
> specifically acknowledges that the decision to waive**

9

> **the right to challenge any later claim of
> ineffectiveness of the defendant's counsel was made by
> the defendant alone notwithstanding any advice the
> defendant may or may not have received from the
> defendant's attorney regarding this right.**

[Plea Agr. at 5-6] (emphasis added).

Moreover, as required under Fed. R. Crim. P. 11, the Court placed Petitioner under oath and questioned him at length in an on-the-record colloquy before accepting his guilty plea. During the questioning, Petitioner made the following representations to the Court: that he fully understood the nature and elements of the charge; that he agreed with the facts the Government claimed it could prove; that he understood he faced a mandatory minimum of ten years with the possibility of life in prison; that he understood his mandatory minimum could be enhanced to twenty years if he had a prior felony drug conviction; that he understood his actual sentence would depend on his criminal history and could differ from what his attorney predicted; that he read the plea agreement, discussed it with his attorney, and fully understood its terms, including the waiver of his right to appeal and/or collaterally attack his conviction and/or sentence; that no one, including his attorney, forced or pressured him to enter the plea agreement; that he plead guilty voluntarily; and was satisfied with his attorney's advice and representation. [Plea Tr. at 4-12, 14-18, 20-22].

Although Petitioner would like this Court to forget the statements he made at the change of plea hearing now that his § 2255 motion is pending, he does not attempt to challenge the validity of these statements or the plea agreement itself. Nonetheless, statements made at a change of plea hearing are presumed to be true. United States v. Standiford, 148 F.3d 864, 868 (7th Cir. 1998). In fact, "[t]he whole point of [a] Rule 11 colloquy is to establish that the plea [is] knowingly and voluntarily made." Id. at 868. The record created at a change of plea hearing serves as a "formidable barrier" to any subsequent appeal or collateral attack. Key v. United States, 806 F.2d 133, 136 (7th Cir. 1986). Therefore, in order to penetrate this "formidable barrier," Petitioner must put forward objective evidence of counsel's deficient performance in the negotiation of the waiver provisions. See Mason, 211 F.3d at 1069. This, however, Petitioner has failed to do. Instead, he simply attacks the effectiveness of counsel's performance during and after the sentencing phase, not the plea phase.[5]

After reviewing the record, including Petitioner's § 2255

_____

[5] Even if Petitioner's fifth ground for relief is actually an attack on counsel's failure to challenge the amount of drugs attributed to him in the PSR, this concerns counsel's performance during the sentencing phase and has nothing to do with counsel's performance during the negotiation of the waiver provisions. See Mason, 211 F.3d at 1069.

motion, supporting memorandum and traverse, it is apparent that none of Petitioner's grounds for relief relate directly to the negotiation of the waiver provisions, as required to render them invalid.  See <u>Jones</u>, 167 F.3d at 1145; <u>Mason</u>, 211 F.3d at 1069. Under these circumstances, this Court is as satisfied today, as it was at the change of plea hearing, that Petitioner's plea agreement, including the waiver of his right to bring the instant § 2255 motion, was voluntary, knowing, and untainted by ineffective assistance of counsel.  The Court, therefore, finds that the waiver provisions contained in the plea agreement are dispositive of all five of Petitioner's grounds for relief, barring him from bringing the instant § 2255 motion.  Even if the plea agreement was unenforceable, each of Petitioner's grounds for relief is nevertheless meritless, as this Court will explain in further detail below.

**1.   The Court did not include Petitioner's prior state felony drug convictions in the calculation of his criminal history points under the sentencing guidelines.**

In his motion as originally filed, Petitioner alleges that his prior state felony drug convictions (Case Nos. 00-CF-53 and 01-CF-44 in Warren County and Case No. 00-CF-146 in Fulton County) were improperly used in the calculation of his criminal history points under the sentencing guidelines.  See U.S.S.G. §§ 4A1.1 and 4A1.2.  While Petitioner has waived his right to

12

collaterally attack his sentence as discussed above, the Court finds it prudent to point out that Petitioner's allegations are simply incorrect.[6]

Although Petitioner did receive five criminal history points under the sentencing guidelines, his PSR indicates that his prior state felony drug convictions were not included in this calculation. [PSR ¶¶ 127-37]. Instead, Petitioner received one point for a 1992 misdemeanor for unlawful delivery of alcohol to a minor (Fulton County Case No. 92-CM-359); one point for a 1997 felony for criminal damage to property (Fulton County Case No. 97-CF-86); one point for a 1999 theft (Fulton Case No. 99-CM-845); and two points for committing the offense in the instant case while on probation from the 1999 theft. [PSR ¶¶ 129, 130, 131, 136 and 137]. Obviously, none of Petitioner's prior state felony drug convictions were used in the calculation of his criminal history points under the sentencing guidelines. Therefore, Petitioner's first ground for relief is completely without merit.

---

[6] The Court also notes that Petitioner appears to have abandoned this argument in his traverse stating, "the **three prior felony convictions for which the [P]etitioner did not receive any criminal history points** were handled incorrectly for purposes of sentencing." Pet'r Trav. ¶ d (emphasis added). He also states, "[s]ince the **prior drug convictions were not used for purposes of criminal history points**; neither should they be used to trigger the enhanced mandatory minimum of Title 21, U.S.C. 841(b)(1)(A). Pet'r Trav. ¶ k (emphasis added).

2.  **The Court properly relied upon Petitioner's prior state felony drug convictions to enhance his mandatory minimum sentence.**

Petitioner argues that because his prior state felony drug convictions are related to the instant federal conviction and cannot be used in the calculation of his criminal history points, this also means that these same convictions cannot be used to trigger the enhancement of his mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A).  Petitioner, however, is simply wrong.

Although it is true that U.S.S.G. § 4A1.2(a) defines the term "prior sentence" as "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense[,]" Petitioner's attempt to apply this definition to 21 U.S.C. § 841(b)(1)(A) is misplaced.  Section 841(b)(1)(A) states in relevant part, "[i]f any person commits such a violation [of this section] after a prior conviction for a felony drug offense becomes final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment . . . ."  The drug statutes and the sentencing guidelines are not one in the same.  As the Seventh Circuit pointed out, "[t]he guidelines' provision explicitly states that the enhancement applies to conduct not related to the instant offense.  Section 841(b)(1)(A) does not contain a

14

similar provision.  It states only that it applies to offenses committed after the prior conviction becomes final and makes no exception for related conduct." United States v. Garcia, 32 F.3d 1017, 1019 (7th Cir. 1994).

While there seems to be little question that Petitioner's prior state felony drug convictions are related to and occurred before the instant federal offense, this fact alone does not determine whether the statutory enhancement provisions of § 841(b)(1)(A) apply.  Rather, "[c]onsidering that the purpose of the mandatory minimum enhancement is to target recidivism," the Seventh Circuit has declared, "that it is more appropriate to focus on the degree of criminal activity that occurs after a defendant's conviction for drug-related activity is final rather than when the conspiracy began." Id. at 1019-20.

Petitioner's first conviction for a state felony drug offense became final on September 26, 2000 (Warren County Case No. 00-CF-53). However, as the PSR indicates, Petitioner participated in further drug-related activity up until his arrest on February 26, 2001, for the instant federal offense. [PSR ¶¶ 59, 69, 73 and 77].  Therefore, because Petitioner continued to engage in a drug-related conspiracy for another five months after his first felony drug conviction was final, the Court properly enhanced his mandatory minimum sentence from

15

ten years to twenty years under § 841(b)(1)(A).

3.    **Trial counsel was not ineffective for failing to challenge the Court's use of Petitioner's prior state felony drug convictions to enhance his mandatory minimum sentence.**

In an attempt to show "good cause" for his failure to timely challenge whether his prior felony drug convictions were triggering convictions for purposes of enhancing his mandatory minimum sentence, Petitioner alleges that his counsel was ineffective for failing to make such a challenge in a timely fashion.  See 21 U.S.C. § 851(c)(2).  However, counsel's performance cannot be said to have fallen outside "the wide range of reasonable professional assistance" recognized by the courts.  See Strickland, 466 U.S. at 690.  The fact that counsel did not object to the Court's use of Petitioner's prior felony drug convictions, standing alone, cannot suffice to demonstrate deficient performance unless counsel's failure to object resulted from his "failure to undertake a good-faith analysis of all the relevant facts and applicable legal principles." Bridgeman v. United States, 229 F.3d 589, 592 (7th Cir. 2000).  As the Supreme Court put it, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"  Strickland, 466 U.S. at 690.

According to the unopposed affidavit of Petitioner's

16

counsel, which was attached as an exhibit to the Government's response, counsel "did extensive research and consulted with other federal defense attorneys, federal law clerks, and others to make sure that the issue regarding [Petitioner] DAVID SLOAN'S, prior state convictions was properly handled at the sentencing hearing." [Aff. ¶ 30]. Moreover, as discussed in full above, the relevant case law of this circuit clearly indicates that counsel was correct in his analysis and the Court did not err when it relied upon Petitioner's prior felony drug convictions for purposes of enhancing his mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). See Lilly v. Gilmore, 988 F.2d 783, 786 (7th Cir. 1993) (holding that counsel cannot be ineffective for failing to forecast changes or advances in the law, or to raise meritless arguments before the court). Therefore, Petitioner is unable to meet the first prong of the Strickland test: "that counsel's representation fell below an objective standard of reasonableness."

**4.  Trial counsel was not ineffective for failing to file a notice of appeal.**

In his § 2255 motion, Petitioner also argues that he reserved the right, in paragraph 9 of the plea agreement, to challenge whether his prior felony drug convictions could be used to trigger the enhancement of his mandatory minimum sentence from ten years to twenty years. Petitioner seems to

17

believe that because he reserved the right to challenge the
Court's use of his prior felony drug convictions, counsel had a
duty to file a notice of appeal regarding this matter and,
counsel's failure to do so is proof of his constitutionally
deficient performance.  Petitioner's argument, however, fails
for several reasons.

First, Petitioner only reserved the right, pursuant to 21
U.S.C. § 851, to challenge the Court's use of his prior felony
drug convictions before his sentence was actually imposed; he
did not reserve the right to make such a challenge on appeal or
by collateral attack.  This is apparent by simply reviewing the
plea agreement itself and the provisions of § 851.

Paragraph 9 of the plea agreement reads in full:

> The defendant expressly waives any right the defendant
> has pursuant to Title 21, United States Code, Section
> 851 to require the United States Attorney's Office to
> file and serve an information stating in writing the
> prior felony drug convictions that support any
> enhanced sentence.[7] The defendant reserves the right
> to challenge whether his prior felony drug convictions

---

[7] Although Petitioner waived his right to an information, he was
nevertheless apprised of the Government's intent to seek an
enhancement of his sentence.  On August 19, 2002, prior to
entering into the plea agreement, the Government filed and
served Petitioner with an information pursuant to 21 U.S.C. §
851, indicating its intent to seek an enhancement of his
sentence based on the following three state felony drug
convictions (each running concurrently):
  (1) Warren County Case No. 00-CF-53 -- April 24, 2000;
  (2) Fulton County Case No. 00-CF-146 -- July 26, 2000; and
  (3) Warren County Case No. 01-CF-44 -- February 26, 2001.

are triggering convictions **under Title 21, United States Code, Section 851.**

[Plea Agr. at 4] (emphasis added).  In accordance with paragraph 9, Petitioner's right to challenge the Court's use of his prior felony drug conventions is governed by 21 U.S.C. § 851.  Section 851(b) states, "any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence."  21 U.S.C. 851(b).  Further, § 851(c)(2) states, "[a]ny challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge."  21 U.S.C. 851(c)(2).  Thus, § 851 makes clear that failure to challenge a court's reliance on a prior felony conviction before the enhanced sentence is imposed, precludes any further challenges in this regard on appeal or by collateral attack.  See <u>United States v. Staples</u>, 202 F.3d 992, 995 (7th Cir. 2000).

In the instant case, Petitioner did not challenge the Court's use of his prior felony drug convictions prior to his sentence being imposed.  Petitioner not only had the opportunity to file an objection with the Court before his sentencing hearing, he was also given the opportunity to object during the sentencing hearing and, failed to do so.  In fact, after being placed under oath, Petitioner and his counsel both indicated

that they had no objections to the PSR other than the proper amount of credit to be applied to Petitioner's federal sentence for time served on related state charges.  [Sent. Tr. at 6-7]. Therefore, Petitioner has waived his right to an appeal on this matter, despite the enforceability of the plea agreement.

Second, just because a person may have a right to an appeal does not necessarily mean that he intends to invoke that right. The Supreme Court has held that there is no constitutional duty for an attorney to file a notice of appeal absent the client's express or implicit request.  See Roe v. Flores-Ortega, 528 U.S. 470, 477-80 (2000).  Where a lawyer disregards his client's specific instructions to file a notice of appeal, his acts are "professionally unreasonable."  Id. at 477.  However, where the defendant has not instructed counsel to file a notice of appeal, the Supreme Court has clarified that:

> [T]he question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. . . . If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

Flores-Ortega, 528 U.S. at 478.  In answering this subsidiary question, the Supreme Court held:

> [C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there

20

> is reason to think either (1) that a rational
> defendant would want to appeal (for example, because
> there are nonfrivolous grounds for appeal), or (2)
> that this particular defendant reasonably demonstrated
> to counsel that he was interested in appealing.

Id. at 480.

In the instant matter, Petitioner does not allege that he instructed his counsel to file a notice of appeal. As the Government points out in its response brief, supported by the unopposed affidavit of Petitioner's counsel, Petitioner never even impliedly suggested to his counsel that he was interested in an appeal. [Gov't Resp. at ¶ 15; Aff. at ¶ 29]. Instead of denying this allegation in his reply brief, Petitioner simply ignores this issue altogether. Therefore, Petitioner's counsel did not have a constitutional duty to file a notice of appeal because it appears that he was not instructed to do so. See Flores-Ortega, 528 U.S. at 477-80. However, this alone does not resolve the matter.

As the Supreme Court stated, to properly determine whether counsel has performed deficiently by failing to file a notice of appeal when he was not instructed to do so, this Court must first determine whether counsel in fact consulted with Petitioner about an appeal. See id. at 478. It is unclear, whether such a consultation took place in this case and, if so, when. Thus, it seems highly likely that counsel did not consult

with Petitioner about appealing his sentence.  Nevertheless, as the Supreme Court explained, this does not necessarily mean that counsel's performance was constitutionally deficient. Petitioner does not appear to have reasonably demonstrated to counsel that he was interested in appealing his sentence and has alleged no facts to indicate otherwise.  Therefore, the only remaining question is whether a rational defendant would want to appeal his sentence under like circumstances.

In <u>Flores-Ortega</u>, the Supreme Court stated that lower courts should focus on the totality of the circumstances, taking into account all the information counsel knew or should have known.  <u>Id.</u> at 480.  The Supreme Court went on to instruct the lower courts to consider the following factors:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal . . . .

<u>Id.</u>

In the instant matter, Petitioner's conviction follows a guilty plea in which he received a 40% downward departure below

22

the mandatory minimum sentence of twenty years, far better than what he bargained for as part of the plea agreement.   As a result, even if Petitioner had reasonable grounds for an appeal, this would not warrant taking a chance of getting an increased sentence.   Furthermore, Seventh Circuit authority clearly indicates that the Court did not err when it relied upon Petitioner's prior state felony drug convictions to enhance his mandatory minimum sentence from ten years to twenty years. Thus, any challenge on appeal regarding this matter would have been frivolous.   See Lilly, 988 F.2d at 786 (holding that counsel cannot be ineffective for failing to raise meritless claims).   Last, but not least, Petitioner expressly waived all his rights to an appeal, which further explains why it is likely that his counsel did not consult with him about taking an appeal.

After analyzing the totality of the circumstances, it is apparent that counsel had no duty to consult with Petitioner about an appeal and his performance was far from constitutionally deficient.

**5.  Trial counsel was not ineffective for failing to investigate the specific type of methamphetamine involved in the conspiracy or to challenge the amount of drugs attributed to Petitioner in the PSR.**

In Petitioner's traverse, he alleges for the first time, that his counsel was ineffective for failing to investigate the

23

specific type of methamphetamine involved in the conspiracy.[8]  In
furtherance of this allegation, he argues that "[c]ounsel did
not explain to [him] that different types of methamphetamines
dictate different sentences under the guidelines[,]" and "[t]his
type of drug inquiry being omitted demonstrates that [counsel]
was objectively deficient . . . ." [Pet'r Trav. ¶ m].
Petitioner, however, cannot make out a claim of ineffective
assistance of counsel because he cannot show that the alleged
deficiency resulted in his prejudice.

A court need not consider the first prong of the Strickland
test if it finds that counsel's alleged deficiency did not
result in prejudice to his client.  See Richardson v. United
States, 379 F.3d 485, 487-88 (7th Cir. 2004).  As the Supreme
Court stated in Strickland, "if it is easier to dispose of an
ineffectiveness claim on the ground of lack of sufficient

---

[8] The Court notes that Petitioner's traverse is to be viewed as
an amendment to his existing motion.  See United States v.
Davis, 348 F. Supp. 2d 964 (N.D. Ind. 2004).  As this circuit
has previously recognized:

> [P]art of every civil case--is an entitlement to add
> or drop issues while the litigation proceeds. . . .
> Because the Rules Governing Section 2255 Proceedings
> for the United States District Courts do not deal with
> amendments to motions for collateral review, the
> district court should turn to Fed. R. Civ. P. 15(a).
> This rule provides that even after the defendant has
> filed an answer, and the plaintiff's absolute right to
> amend has lapsed, the court still should grant leave
> 'freely . . . when justice so requires.'

Johnson v. United States, 196 F.3d 802, 805 (7th Cir. 1999).

prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.  This Court will now heed the Supreme Court's advice and explain why the alleged deficiency did not result in prejudice to Petitioner.

If the alleged deficiency is a failure to investigate, then Petitioner must provide "the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." Richardson, 379 F.3d at 488 (internal quotations and citations omitted).  The sentencing guidelines distinguish between three different mixtures or substances of methamphetamine:  (1) Methamphetamine;[9]  (2) Methamphetamine (actual);[10] and "Ice".[11]  Petitioner, however, fails to put forth any evidence or even an allegation as to which type of methamphetamine the investigation would have produced.  Instead, he merely states that counsel should have investigated the type of methamphetamine involved in the

---

[9] This refers to any mixture or substance containing a detectable amount of methamphetamine.  U.S.S.G. §2D1.1(c)* (Notes to Drug Quantity Table (A)).

[10] This refers to the weight of the methamphetamine, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing methamphetamine at 50% purity contains 5 grams of Methamphetamine (actual). U.S.S.G. §2D1.1(c)* (Notes to Drug Quantity Table (B)).

[11] This means a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity.  U.S.S.G. §2D1.1(c)* (Notes to Drug Quantity Table (C)).

conspiracy, without more. It is manifold and clear: such self-serving statements alone are insufficient to satisfy the prejudice prong of the Strickland test. See Berkey v. United States, 318 F.3d 768, 772-73 (7th Cir. 2003).

Further, while it is true that different mixtures or substances of methamphetamine result in different base offense levels, no other mixture or substance of methamphetamine recognized by the guidelines would have produced a lower base offense level than that actually received by Petitioner. Petitioner was charged with and pled guilty to conspiracy to manufacture more than five hundred (500) grams of a mixture or substance containing a detectable amount of methamphetamine. The exact quantity that Petitioner was held accountable for under the PSR was 12.15 kilograms. This resulted in a base offense level of 36. See U.S.S.G. §2D1.1(c)(2) ("At least 5 KG but less than 15 KG of Methamphetamine"). However, if Petitioner would have pled guilty to and held accountable for 12.15 kilograms of either Methamphetamine (actual) or "Ice", this would have resulted in a base offense level of 38. See U.S.S.G. §2D1.1(c)(1) ("1.5 KG or more of Methamphetamine (actual), or 1.5 KG or more of "Ice"). Therefore, if Petitioner was able to succeed in proving that he may have been charged with the wrong type of methamphetamine, he would in essence be

26

exposing himself to a higher base offense level (of 38), rather than his current base offense level (of 36).

If anything, counsel's alleged failure to investigate the specific type of methamphetamine involved in the conspiracy actually benefited Petitioner, preventing him from facing a higher base offense level and possibly a longer sentence. As a result, Petitioner cannot show that counsel's alleged deficiency caused him prejudice.

Moreover, it is implausible to think that Petitioner is seeking to have his sentence vacated, set aside, or corrected so that he can face an even longer prison sentence. This is precisely why the Court does not believe that counsel's failure to investigate the type of methamphetamine involved in the conspiracy is the gist of Petitioner's fifth ground for relief.

In his traverse, Petitioner states that "[s]ince the defendant plead [sic] guilty to conspiracy to [m]anufacture methamphetamine and the quantity involved in the conspiracy was more than 500 grams, this could have resulted in a base sentencing level of 32 or 36 . . . why did defense counsel agree to a starting level of 36 . . . rather than 32?" [Pet'r Trav. ¶ m]. In deed, if Petitioner had only been held accountable for at least 500 grams but less than 1.5 kilograms of a mixture or substance containing a detectable amount of methamphetamine,

then his base offense level would have been a 32.  See U.S.S.G. §2D1.1(c)(4) ("At least 500 G but less than 1.5 KG of Methamphetamine").  However, he was held accountable for 12.15 kilograms of a mixture or substance containing a detectable amount of methamphetamine which resulted in a base offense level of 36.  See U.S.S.G. §2D1.1(c)(2) ("At least 5 KG but less than 15 KG of Methamphetamine").  Thus, what Petitioner is really alleging in his fifth ground for relief is that counsel was ineffective for failing to challenge the amount of drugs attributed to him in the PSR, resulting in the imposition of a higher base offense level.

In essence, Petitioner is attempting to make an argument under the Supreme Court's recent decision in United States v. Booker, 125 S. Ct. 738 (2005).  In Booker, the Supreme Court held, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilt or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  The Booker decision, however, does not apply to the instant case.

At the change of plea hearing, Petitioner pled guilty to a conspiracy to manufacture more than five hundred (500) grams of a mixture or substance containing methamphetamine.  Thus, at a

28

minimum, the facts established by his guilty plea support a base offense level of 32.  <u>See</u> U.S.S.G. §2D1.1(c)(4).  And, given that Petitioner had a criminal history category of III; this would have resulted in a guideline range of 151 to 188 months of imprisonment.  <u>See</u> U.S.S.G. § 5A.

Petitioner, however, was only sentenced to 144 months which was reduced to 129 months of imprisonment after fifteen months credit was applied to his sentence for time served in state prison on related charges.  Thus, despite the fact that the Court attributed 12.15 kilograms of a mixture or substance containing methamphetamine to Petitioner based on evidence contained in the PSR, the Court did not impose a sentence exceeding the maximum authorized by the facts established by his guilty plea.  As a result, Petitioner fifth ground for relief is completely without merit and counsel cannot be held ineffective for failing to raise meritless arguments before the court.[12]  <u>See</u> <u>Lilly</u>, 988 F.2d at 786.

---

[12] Even if <u>Booker</u> was applicable to the instant case, Petitioner's fifth ground for relief would nevertheless fail because the Seventh Circuit has found the rule announced in <u>Booker</u> does not apply retroactively to federal criminal cases that became final before its release on January 12, 2005.  <u>See</u> <u>McReynolds v. United States</u>, 397 F.3d 479, 481 (7th Cir. 2005). Judgment was entered in Petitioner's case on February 10, 2004. Petitioner then had ten business days--until February 24, 2004-- to file a notice of appeal.  <u>See</u> Fed. R. App. P. 4(b)(1)(A)(i), 26(a).  He failed to do so and his case became final on February 24, 2004, prior to the release of the <u>Booker</u> decision.

**IV.**
**CONCLUSION**

Petitioner's § 2255 motion is barred by the waiver provisions contained in his plea agreement. Even if the waiver provisions are unenforceable, all five of Petitioner's grounds for relief are nevertheless meritless.

IT IS THEREFORE ORDERED that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [Doc. # 1] is DENIED. CASE TERMINATED.

Entered this  26  day of October, 2005.

                              /s/  Joe B. McDade
                                 JOE BILLY McDADE
                            United States District Judge

30